The first argued case this morning is Number 2010-7013, McBurney v. Department of Veterans Affairs. Mr. McBurney? Good morning, Your Honor. Proceed. May it please the Court, my name is Mark McBurney, I represent the appellant with me as co-counsel and the appellant himself is John McBurney. Several issues arise from this case, I hope to address two, one, the force and effect of stipulations between the secretary and a veteran in the VA system, and two, the statutory definition of detainment under 38 U.S.C. 101-32A. This case was hobbled from the start by the RO's negligence. That negligence can be seen clearly at appendix pages 30, 35, 42, and 68. How long was Mr. McBurney detained or in custody? For one hour, Your Honor. One hour? We believe. And that qualifies him as a prisoner of war? We believe, Your Honor. There's no minimum time period set for detainment in the statute. He was held at gunpoint by three German soldiers for one hour, and then he dove behind a tree as they fired at him. He was on the field of battle for a fortnight. In other words, he resisted, he escaped. This was really conflict, wasn't it, rather than imprisonment? We don't think it was conflict because he was unarmed. He was unarmed at point-blank range with three German soldiers. When he broke away, we believe he was an escaped prisoner, not combat, because he wasn't. There was no combat, there was no conflict, because he was unarmed. Those four documents are the administrative decision, the statement of case issue, the statement of case decision, and the VCAA notice. And each one told McBurney that he had to prove comparability of circumstances, and of course, that was incorrect. The people who have to prove comparability of circumstances are those detained in peacetime or those detained in wartime by non-enemy forces. McBurney was grabbed in wartime by German forces. This was not a collateral issue. This was the very core, the very essence by which McBurney's case would be judged. McBurney, confused by the RO's insistence that this controlled, sought two conferences just a month before his board hearing. And at those conferences, he raised 88 stipulations with the RO. The RO agreed to 50 stipulations. Three of those stipulations clearly stated that McBurney was detained by enemy forces during wartime. McBurney's intent, of course, in getting these stipulations was to wall off an attack, just to make sure that the RO would not be using 32A for its reasoning. The intent of the RO in engaging in these stipulations is a bit more problematic. Perhaps they were helping a veteran prepare his case in a professional and well thought out manner, but a collateral issue arises. Why would the RO director and the attorney who participated in these stipulations, why would they participate in stipulations that they knew or should have known would have no effect before the board just two weeks later? The veteran reasonably relied on those stipulations. Can I ask you a question about the stipulations? They appear at what is marked page 52 at the back of the blue brief. Now page 52, 53, and 54 appear to be one document, and then pages 55, 56, and 57 appear to be  Yes, Your Honor. Well, we submitted two sets of stipulations and the RO responded with two sets of answers. And you can see the RO's answers are simply yes or no or unknown. But the document on page 55 has what appears to be a different type or printing than the one on 52. And the reason I raise this is the one on page 52, 53, and 54 is not signed and has no name even of any person at all on it other than Mr. McBurney at the top of the first page. Whereas the second one appears to have the name of, it says prepared by BG Donley. That's correct, Your Honor. At the end of it. So I'm wondering who prepared the one on page 52 and how would we know? The RO prepared that document. You're correct in that there's no indication of signature. We would argue that that's not necessary, but also we would say that Well, we can't make a fact finding as to who prepared it. And there doesn't appear to be any in the record at this point. So it seems that in light of that, the best that you could hope for out of us would be that we would vacate and remand for a determination of whether or not this was a stipulation by the government. That, Your Honor, or I might refer you to the very first line of page 52. VARO responses to documents submitted by Mr. McBurney on May 7, 2008. But Mr. McBurney could have typed that. The VARO responses to documents. I mean, we don't know for sure who did that, right? I mean, the record doesn't disclose it, does it? I would agree with you, Your Honor. It's not clear. However, I think from the context of the three pages, I think it's a fair, a reasonable assumption that these were. But we can't make assumptions on appeal. Yes, Your Honor. Of course you can't. There were three stipulations where the RO explicitly agreed that McBurney was detained by enemy soldiers. Now, how did the board treat these stipulations? Now, does the, who has the authority to stipulate to bind the government? And I'm sure you'd like to say everyone. But before you do that, I caution you. Certainly in the government contracts area, it was, I learned to my surprise that apparent authority can't bind the government. So even if a government employee believes he himself has authority to authorize an adjustment to a government contract, if it turns out he didn't, then even if he thought he did and represented he did and everything else so that the contractor was, you know, through no fault, he nonetheless can't bind the government. The contractor can't uphold that as a binding contract. So in light of that, my question to you is, is there anything similar or how should, how should we determine who can stipulate? I would respond that the director and the RO attorney were in the room when these stipulations were negotiated. There were no higher individuals in the regional office in Providence. We raised this. What concerns me about the case, that as we cut through all of the points that you're making, which seemed to me to be quite valid in terms of the relationship, there's still, we still get back to the question that really was raised by Judge Lurie as well. Was this in fact, does this meet the requirements of being a prisoner of war? Resolving all of the uncertainties in favor of the veteran. Yes, Your Honor. The only issue given that McBurney was seized in wartime and by enemy forces, the only issue is whether he was detained. And I'm going to get to that in my second part, the definition of detained. I can cut to that now if you prefer, Your Honor. I think it would be helpful. Time is as short as you know in these arguments. Okay. Of course, in examining the statutory definition of detained, we'd argue initially that these stipulations covered this matter. So resort to dictionaries or congressional intent is not necessary. However, in the board ruling regarding detainment, the board looked at two different dictionary definitions and discarded both saying that they weren't applicable to McBurney's situation and they weren't applicable to general combat situations. The court, in reviewing the board's decision, the court focused extensively on internment as opposed to detainment. And we would argue that was irrelevant because under the statute, under 32A, you can be interned or detained. And the board considered dictionary definitions, sorry, the court considered dictionary definitions and it too felt that they were not applicable or didn't encompass battlefield situations. So it's our belief that the definition of detainment is still a ripe question, ripe for this court now as it applies to this case and the fact that cases like this might be coming in the future. And all we could do is urge this court to construct a definition of its own. Your point earlier that there's no strict time limit behind the definition of detained, but there's obviously a spectrum and one hour almost falls off one end of the spectrum. One hour during which there was a struggle just doesn't sound like being a prisoner of war. I mean, he wasn't taken anywhere. I assume he didn't have handcuffs. He was not handcuffed, Your Honor. No. In fact, he ran away. Well, I wouldn't use those words, but I understand. He fled. McBurney was ordered to drop his weapon. He crossed the field to take the surrender of three armed German soldiers who were not flying a white flag. He said, I'm here to take you prisoner. They said, no, we're not going to be your prisoner. You're our prisoner. And they pointed their guns at him. And I would argue at that point, he became a prisoner. And I would ask the court- He became at risk, certainly. I beg your pardon, sir? He became at risk. Certainly. But I would say that in the totality of circumstances which should be considered, the issues that we'd say would come up under totality of circumstances are, was the detained armed or unarmed? Were the detainers armed or unarmed? Were hostilities ongoing, ceased, or never commenced? Did the detainer announce an attempt to capture the prisoner? Was there a weapons disparity between the detained and the detainer? Was there a numbers disparity between the detained and the detainer? Did the detained have the freedom to withdraw from the field of battle without substantial harm? And of course, if McBurney turned his back, it was certain that he would have been shot in the back. The one unhelpful indicia we think for determining detainment is resistance. Because I think we want all our POWs to resist to some degree or another. All right, thank you. Thank you, Mr. McBurney. We'll save you rebuttal time. Thank you, Your Honor. Mr. Oliver? Yes, may it please the court. The crux of petitioner's claim is that the stipulations between the petitioner and RO bound the board. However, those stipulations, putting aside the issue of whether or not they are executed and their authenticity, etc., even if you assume that they're authentic, they simply mirror the findings of the RO, which are entitled to no deference by the board. The Federal Circuit has consistently held that the initial agency, that the RO's findings are reviewed on a de novo basis, which is exactly what— I don't understand why it matters that they mirror the findings by the board. When two parties to a litigation enter a stipulation, no matter how wrong the next level fact finder might think the stipulation is for one party or the other, it's binding for the purposes of the case. I don't understand why the government is free to stipulate and then change its mind. Because the stipulation here was that, as a matter of fact, that the petitioner was forcibly detained. Now that's a legal determination, a mixture of a factual and legal determination, and that finding, that premise that he was forcibly detained, that's part of the definition under the statute, under 38 U.S.C. 1032A is detained. There's no dispute as to what happened. The issue is the legal significance, not what happened. I completely agree with you. Then what are you asking us to refer to? What I'd ask you to refer to is the opinion of the Veterans Court and the board, which found that detained, for purposes of this POW statute, must involve some element of custody or— But that's not a factual question. That's a definition, a legal definition of a statutory provision. That's exactly what's at issue, Your Honor. That's correct. It's whether or not the Veterans Court and the board properly defined the word detained in the POW statute.  Where is the requirement for deference? The statute for this court requires us to review matters of law. That's correct. And under 38 U.S.C. 7292D2, the court does not engage in an application of law to facts. And that's exactly why— Is that right? We're not applying law to fact? Are we deciding whether the statutory word detained applies to particular facts here? Well, what you're deciding is whether or not the Veterans Court and the board below correctly defined the word detained generally, whether or not that definition was accurate, not just in the petitioner's case, but any case in which you have someone who's claiming that they're a former prisoner. So if we reverse, it's got to go back to the application of the statute to the facts? If you find that the board and the Veterans Court incorrectly defined the word detained, in other words, the board and the Veterans Court found that the word detained has some element of custody of control, as opposed to what the petitioner urges, which is hinder or delay. And so to answer your question, Judge Lurie, yes, if you find that that determination, that legal determination was incorrect, that the statute is broad enough or that the word detained is, in the context of the POW statute, is broad enough to include hinder or delay— Is there a time aspect to the meaning of detainment? It depends on which definition, because the dictionary, as both courts, the Veterans Court and the board found, defines it in two different ways. If it's hinder or delay, then that implies some time element. If it's some element of custody of control, then if you're handcuffing someone, as I think you mentioned, or something along those lines, then that could happen in, obviously, a second. And so the definition that the Veterans Court and the board urges is the correct one the government submits, because if you broaden the definition to include hinder or delay in a baffled context, then that leads to kind of absurd results. You can have a situation where an enemy or a fighting force is unable to withdraw, is pinned down by fire, and that would mean that they're being hindered or delayed, or if you have hand-to-hand combat where someone is grabbing someone and they wrestle away, well, they were hindered, they were delayed. So you cannot, in this context, have a definition that is that broad, and that's what the Veterans Court and the board found below, and that's the legal issue. Can the VA enter into stipulations? Can the VA enter into—the board certainly can enter into stipulations by statute. Can the VA, can the regional office, can the director of the regional office in the context of adjudicating a dispute enter or, you know, litigating a dispute enter into stipulations? They—the regional office can stipulate to certain facts, and they can enter into stipulations. Those stipulations are not bound by—well— What do you mean they're not bound by? Well— The government's not bound by—they can enter into stipulations, but they're not bound by them? Well, it's clear the board is not bound by factual findings by the RO. I'm not asking about factual findings. I'm asking about stipulations. In court of law, parties are held to stipulations. Yes. Isn't the government a party? Yes, the government's a party. Shouldn't they be held to stipulations? The government can be held to stipulations, correct. Can the government be held to a stipulation made by a regional office in deciding a veterans dispute? The answer to that would be no, then, to the extent that the board cannot under—as this court has consistently held, the relationship between the board and the RO is one of— the RO is kind of an inferior—is the agency kind of original jurisdiction that originally decides the claims. And the determination that— Well, the agency is the party, right? It's the agency versus Mr. McBurney. So why can't the party, the VA, the agency, why can't they enter into a stipulation, regardless of who the fact finder is, why can't they enter into a stipulation and say, for example, we're going to take this term off the table while serving in the active military. We agree. Mr. McBurney was serving in the active military. The agency says this. And so Mr. McBurney says, okay, good, so I don't have to introduce anything to establish the timeline. No, no. That is something we'll stipulate to. Let's all focus on what it means to be forcibly detained instead. Under those circumstances, then, would it be fair? Would it be appropriate for the board to say, wait a minute, there hasn't been proof Mr. McBurney fails because he failed to offer proof that this occurred while he was in the military. And Mr. McBurney says, no, no, they stipulated. Would that be a fair thing? Would the board be able to do that? No, but that's not exactly what happened. I know that's not what happened. I'm trying to understand what they can and can't stipulate to. So they could stipulate to that. The VA regional office could stipulate to something like that, then Mr. McBurney wouldn't have to offer that proof to the board. And the board would not, under those circumstances, be free to say he failed to make his claim by failing to offer that proof. Is that correct? Well, no. I think the starting principle, and this is consistent with federal circuit case law interpreting what degree of deference the board must give the RO. Because unlike the veterans court, which the factual findings... This isn't about deference. We're not talking about fact findings. We give deference for fact findings. We don't give deference for stipulations. The board doesn't give deference for stipulations. No district court gives parties deference for stipulations. Deference only applies to fact findings. We're talking about two parties who stipulated to something. We're not talking about a fact finding. Okay. And so my understanding, even if you assume that, yes, the RO, let's assume, as I said at the outset, that the regional office stipulated that Mr. McBurney, the petitioner, was in fact detained, that became a factual finding in the administrative by the RO. That was... It could also be a fact finding, but it was a stipulation. It was also a stipulation, but the stipulation is not relevant to this action because... Courts don't give meaning to stipulations. Parties agree to something. Sure. And isn't it possible Mr. McBurney then didn't offer proof or put on evidence on something because it was the subject of a stipulation he no longer felt he had to? Well, I would say no, Your Honor. That's more because the board addressed this issue with regard to whether or not there was any presence. It's pretty clear if you look at the board's decision, and not only the board's decision, but Mr. McBurney's brief before the board, which is at pages three to eight of the supplemental appendix, that he advanced the argument regarding the applicability of the POW statute and all of the facts regarding the buddy statements and his own statements in terms of what happened were before the board. And the board took those facts and decided this comes down to a legal issue. Both the board and the Veterans Court determined that the facts were undisputed in terms of, as Judge Newman said, the facts are what they are in terms of what happened that particular afternoon and perhaps early evening. The only real issue then is how do you interpret the statute, meaning how do you interpret detained? Do you interpret it broadly to include him or delay, or do you not interpret it more narrowly with regard to restraining custody? And that's what I mean for purposes of this lawsuit in terms of the posture in which these stipulations place us. They're in the R.O. decision. There's no question that the R.O. said, yes, they're detained. And that finding is bound up in the Veterans Court's and the board's determination that if you look at the statutory definition of detained, given the facts, because I think you have to understand, Your Honor, that the R.O.'s conclusion that the petitioner was never outside the direct control of the armed forces, that was consistent with the board and the Veterans Court's conclusion that he was not detained because it seems clear that the R.O. assumed that detained means tender or delay. It didn't say that, but it's pretty clear. That would be an argument over how the stipulation should be interpreted, right, but not whether or not the government should be bound by it. But I think because the R.O. found that he was detained and detained is, in part, an element of the statute, I think, in effect, the stipulation is moot. And here's why it is. It's because the court really only has to focus on, as a legal matter, not the application of law to facts that you just mentioned, but simply how do you define this more generally? How do you define detained? And it does not need to... Well, you would like us to focus on that, but they've raised the discrete issue of whether or not the government is bound by a stipulation it makes, which takes the issue off the table. And it does. If there is a stipulation, you agree, don't you, that parties can stipulate even as to matters of law? I mean, yeah. Yes, of course they can. Generally, of course. You have to agree, right? Two parties can stipulate to narrow an issue to whatever they want for purposes of adjudication and then just ask the court to decide the resulting whatever's left over. So parties are free to stipulate as to facts, as to law, to narrow the issues for focus of further adjudication. And so, as I understand it, their argument to us is whether or not he was forcibly detained was taken off the table by the government when they stipulated to it. So while if we have to reach that issue, he makes an argument over how it should be interpreted, but my understanding, and I might be wrong and he can correct me on rebuttal, but my understanding of his argument is that the government stipulated. Well, I mean, there are several problems with that argument, Your Honor. I mean, one, if you look at the stipulations themselves as a fact of matter, you know, they're not, one, they're not, they're really purported stipulations at this point. I mean, they're not executed. There's no, the person who prepared by Mr. Donnelly is not a lawyer. Well, that all goes to whether or not we would have to vacate and remand for a court of factual determination. Right, but even if, but I guess getting to the heart of the matter, right, so even, as I mentioned at the outset, assuming that these are authentic stipulations, then at the end of the day, what, if you read the stipulations, he's simply stipulating that the petitioner was detained by these forces, okay? That still begs the question under the statute of the proper definition of detained, and it's the board's response, the board, as a federal service consistently held, reviews these findings de novo. There's no question about that, and so to the extent that the RO, based on the stipulations that, okay, he was forcibly detained, that's not an issue. The board still can review those findings de novo. This is not a situation where- The board made no mention of the stipulation. It does not, the word stipulation doesn't appear in their decision. That's correct. To me, it seems quite clear that the board didn't even acknowledge or take into account the stipulation. If I believe the government is capable of stipulating away a fact or a legal issue, don't you think the appropriate course of action should be in this case to vacate and remand and let the board determine in the first instance what the stipulation then means? I mean, that's one course of action, Your Honor, but I think it's, here on the record, it's pretty clear based on, if you look at the board's decision and compare it to the RO's decision, as I was saying, as I mentioned earlier, the RO expressly found that the petition was never outside the control of the armed force, the U.S. forces in that matter, okay? And so it's pretty clear that the RO, in terms of his fact finding or in terms of his determination of what detained him, concluded that detained did not involve some element of custody control because that would be inconsistent with his factual finding but must have assumed that detained means tender or delay. The board certainly is, given the fact that it has a noble review, That all sounds like a lot of fact finding. You generally don't want me doing that, do you? No, I don't. That's why the only issue here is the proper, the point I was going to get to, is that the issue is then what is the proper definition of what detained more broadly, not necessarily in the specific context of this case and that's what the veterans court and the board did here. They determined that the proper definition is involving some element of constraint or custody. That's not the determination that the RO made and the board had the authority to do that given the fact that it has de novo, that those proceedings by the RO are entitled to really no deference or entitled to de novo. So your view is constraint of custody are the hallmarks of the definition of detainment. That's correct and that's consistent with the legislative history of the POW statute. That's consistent with generally accepted principles of what prisoner of war is. If you look at the 8th edition of the black book. As a practical matter, even though it's not before us, what's the difference between being within the statute and not being within it? Added benefits? Yeah, I mean there's a presumption that being a former prisoner of war, being a former prisoner of war, you're entitled to certain presumptions with regard to service connectedness. So with regard to, for instance, dental benefits or the co-payment of premiums and if you have certain diseases and there's a presumption that there's a service connectedness if you are in fact a former prisoner of war. I'm afraid we're out of time, Mr. Oliver. Thank you. We will not detain you further. Mr. McBurney. Thank you, Your Honor. I will be brief. I'd just like to reiterate that the board did not make a definition for detainment. It considered two dictionaries and then it decided that neither one applied to the situation and it just moved on. So the board made no finding on that front. We would strenuously disagree with my colleague with regard to our intent at the stipulations with regard to detainment. We were thoroughly confused by the RO's negligence. We couldn't understand why they insisted that we prove comparability of circumstances and that's exactly why we worded the stipulations the way we did to account for detained by enemy forces. Furthermore, I would say that John McBurney was certainly in custody and was certainly restrained on the battlefield when three German soldiers pointed their weapons at him from point-blank range and said, you are our prisoner. Under common understandings of those words, I think that's evident. Finally, I would urge the court to consider Shinseki versus Sanders for this matter. In that matter, of course, the Supreme Court instituted civil rules for harmless error on the VA system. It found that this court and the RO system were too rigid, too complex, and unreasonably burdensome for harmless error rules and I would say that for purposes of stipulations in this framework, those principles all apply. The board's all issues of fact and law purview is too rigid as applied to stipulations. It's too complex for veterans who are trying to weed their way through this very complex VA system and it's unduly burdensome both on the VA and on the veteran if they're denied this opportunity to provide clarity, administrative efficiency, accountability, and transparency to the system. If this court rules that stipulations apply in this system, then it would protect veterans like McBurney from being attacked through the back door, which is exactly what happened in this case. Thank you. Thank you, Mr. McBurney and Mr. Oliver. The case is taken under submission.